1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    EASTERN DISTRICT OF CALIFORNIA

7

8  PIT RIVER TRIBE; NATIVE            No.  2:19-cv-02483-JAM-AC
   COALITION FOR MEDICINE LAKE
9  HIGHLANDS DEFENSE; MOUNT
   SHASTA BIOREGIONAL ECOLOGY
10 CENTER; and QUALITY               **ORDER DENYING FEDERAL**
   ENVIRONMENT,                      **DEFENDANT'S MOTION TO DISMISS**
11                                   **AND GRANTING IN PART AND DENYING**
            Plaintiffs,              **IN PART CALPINE'S MOTION TO**
12                                   **DISMISS**
        v.
13
   BUREAU OF LAND MANAGEMENT;
14 UNITED STATES DEPARTMENT OF
   THE INTERIOR; CALPINE
15 CORPORATION; and CPN
   TELEPHONE FLAT, INC.,
16
            Defendants.
17

18

19     This matter is before the Court on the Bureau of Land

20 Management's ("BLM" or "Federal Defendant") and Calpine

21 Corporation's ("Calpine" or "Corporate Defendant") (collectively

22 "Defendants") Motions to Dismiss.  Fed. Def.'s Mot. to Dismiss,

23 ECF No. 64; Corp. Def.'s Mot. to Dismiss, ECF No. 67.  Plaintiffs

24 filed an opposition, ECF No. 75, to which Defendants replied, ECF

25 No. 76, 77.  After consideration of the parties' written

26 arguments on the motions and relevant legal authority, the Court

27 DENIES Federal Defendant's Motion to Dismiss and GRANTS in part

28

                                    1

1    and DENIES in part Calpine's Motion to Dismiss.[1]

2         I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

3         Plaintiffs include the Pit River Tribe and several regional

4    nonprofit organizations with an interest in the Medicine Lake

5    Highlands area (collectively "Pit River" or "Plaintiffs").  First

6    Amended Compl. ("FAC") ¶¶ 7-11, ECF No. 63.  Defendant BLM is an

7    agency within the United States Department of Interior charged

8    with managing certain lands and natural resources owned by the

9    federal government.  FAC ¶ 12.  Plaintiffs challenge the

10   continued existence of federal Geothermal Resources Lease No.

11   CA12372, issued by BLM pursuant to their statutory authority

12   under the Geothermal Steam Act ("GSA"), which is currently held

13   by Defendant Calpine Corporation.  FAC ¶ 1.  Plaintiffs also

14   challenge the continuance of the BLM-managed Glass Mountain Unit,

15   which Calpine operates and exclusively leases.  Id.

16        This action is the latest in a series of suits brought by

17   Pit River concerning the area.  See Pit River Tribe v. U.S.

18   Forest Serv. ("Pit River I"), 469 F.3d 768 (9th Cir. 2006); Pit

19   River Tribe v. Bureau of Land Mgmt. ("Pit River II"), 939 F.3d

20   962 (9th Cir. 2019).  The first Pit River case involved two other

21   leases outside the original Glass Mountain Unit on which Calpine

22   proposed to develop the so-called Fourmile Hill Geothermal

23   Development Project.  See Pit River I, 469 F.3d at 775-78.  BLM

24   extended those leases for a period of five years in a 1998

25   administrative decision, and then subsequently approved the

26

27   _____
     [1] This motion was determined to be suitable for decision without
     oral argument.  E.D. Cal. L.R. 230(g).  The hearing was
28   scheduled for October 13, 2020.

1   project on them.  Id. at 777.  Plaintiffs successfully challenged

2   those agency decisions under § 706(2) of the Administrative

3   Procedure Act ("APA") in Pit River v. U.S. Forest Serv. ("Pit

4   River I"), 469 F.3d 769 (9th Cir. 2006).

5       In a separate 1998 administrative action, BLM continued

6   twenty-six unproven geothermal leases within the Glass Mountain

7   Unit for an additional forty years based on one productive lease

8   in the Unit, Lease CA12372.  Pit River Tribe v. Bureau of Land

9   Mgmt., 793 F.3d 1147, 1151-53 (9th Cir. 2015).  Plaintiffs

10  separately and successfully challenged that agency decision under

11  § 706(2) of the APA in Pit River Tribe v. Bureau of Land Mgmt.

12  ("Pit River II"), 939 F.3d 962 (9th Cir. 2019).  Specifically,

13  this Court, which was subsequently affirmed by the Ninth Circuit,

14  found that § 1005(a) of the GSA only permits production-based

15  continuations on a lease by lease basis, not unit wide.  See Pit

16  River II, 939 F.3d at 975.  Plaintiffs in Pit River II did not

17  challenge the validity of the productive lease, Lease CA12372.

18  See id. at 964.

19      Plaintiffs now challenge the continuing validity of Lease

20  CA12372 and the Glass Mountain Unit.  See generally FAC.

21  Specifically, Plaintiffs allege that GSA § 1005(g)-(h) and BLM's

22  current "production extension" regulations impose ongoing

23  requirements on lessees that Calpine has failed to satisfy,

24  mandating termination.  FAC ¶¶ 24-36, 55-64, 78-80.  Relatedly,

25  they also claim that the Glass Mountain Unit Agreement, GSA

26  § 1017 and the implementing regulations, require BLM to ensure

27  the Unit is administered in the public interest, including

28  through diligent exploration, development and production.  FAC

3

1  ¶¶ 37-54, 65-77, 81-83.  Plaintiffs claim BLM is obligated to

2  terminate the Lease and Unit as these requirements have not been

3  satisfied.  FAC ¶¶ 78-83.  Plaintiffs have brought both claims

4  under § 706(1) of the APA which requires the court to "compel

5  agency action unlawfully withheld or unreasonably delayed." 5

6  U.S.C. § 706(1).

7                        II.   OPINION

8       A.   Legal Standard

9       Under Rule 12(b)(1), a motion to dismiss for lack of

10  subject matter jurisdiction will be granted if the complaint, on

11  its face, fails to allege facts sufficient to establish subject

12  matter jurisdiction.  Savage v. Glendale Union High Sch., 343

13  F.3d 1036, 1039 n.2 (9th Cir. 2003).  When a party brings a

14  motion to dismiss under Rule 12(b)(1), the plaintiff bears the

15  burden to prove jurisdiction exists.  Sopack v. N. Mountain

16  Helicopter Serv., 52 F.3d 817, 818 (9th Cir. 1995).  There are

17  two standards that can apply to a motion to dismiss under Rule

18  12(b)(1) depending on the nature of a party's challenge.  Crisp

19  v. United States, 966 F. Supp. 970, 971-72 (E.D. Cal. 1997).  If

20  a party brings a facial challenge, the court accepts the factual

21  allegations in the complaint as true akin to a Rule 12(b)(6)

22  motion.  Id.  If a party brings a factual challenge, the court

23  does not accept plaintiff's factual allegations as true.

24  Thornhill Publ'g. Co. v. Gen. Tel. & Elec. Corp., 594 F.2d 730,

25  733 (9th Cir. 1979).

26       A Rule 12(b)(6) motion challenges the complaint as not

27  alleging sufficient facts to state a claim for relief.  Fed. R.

28  Civ. P. 12(b)(6).  "To survive a motion to dismiss [under

1  12(b)(6)], a complaint must contain sufficient factual matter,

2  accepted as true, to state a claim to relief that is plausible

3  on its face." Ashcroft v. Iqbal, 556 U.S. 662, 279 (2009)

4  (internal quotation marks and citation omitted).  While

5  "detailed factual allegations" are unnecessary, the complaint

6  must allege more than "[t]hreadbare recitals of the elements of

7  a cause of action, supported by mere conclusory statements."

8  Id. at 678.  "In sum, for a complaint to survive a motion to

9  dismiss, the non-conclusory 'factual content,' and reasonable

10 inferences from that content, must be plausibly suggestive of a

11 claim entitling the plaintiff to relief." Moss v. U.S. Secret

12 Serv., 572 F.3d 962, 969 (9th Cir. 2009).

13      B.   Analysis

14           1.   Zone of Interest

15     To assert a claim under the APA, a plaintiff must be

16 "adversely affected or aggrieved by agency action within the

17 meaning of a relevant statute." 5 U.S.C. § 702.  To satisfy

18 this requirement, the plaintiff "must assert an interest

19 'arguably within the zone of interest to be protected by the

20 statute or constitutional guarantee in question.'" Nev. Land

21 Action Ass'n v. U.S. Forest Serv., 8 F.3d 713, 716 (9th Cir.

22 1993) (quoting Ass'n of Data Processing Serv. Org., Inc. v.

23 Camp, 397 U.S. 150, 153 (1970)).  This test "is not meant to be

24 especially demanding" and is to be applied "in keeping with

25 Congress's 'evident intent' when enacting the APA 'to make

26 agency action presumptively reviewable.'" Match-E-Be-Nash-She-

27 Wish Band of Pottawatomi Indians v. Patchak, 567 U.S. 209, 225

28 (quoting Clarke v. Sec. Indus. Ass'n., 479 U.S. 388, 399

1   (1987)).  The zone of interest test does not require any

2   "indication of congressional purpose to benefit the would-be

3   plaintiff."  <u>Clarke</u>, 479 U.S. at 399-400.  The word arguably in

4   the test indicates that the benefit of any doubt goes to the

5   plaintiff.  <u>Patchak</u>, 567 U.S. at 225.  "The test forecloses suit

6   only when a plaintiff's interests are so marginally related to

7   or inconsistent with the purposes implicit in the statute that

8   it cannot be assumed Congress intended to permit suit."  <u>Id.</u>

9   (internal quotation marks and citation omitted).

10        Defendants argue that Plaintiffs' claims fall outside the

11   zone of interest of the GSA and therefore they do not have a

12   cause of action under the APA.  <u>See</u> Fed. Def.'s Mot. at 8.

13   Defendants claim that Plaintiffs' first cause of action falls

14   outside the zone of interest of § 1005(a) as this Court

15   previously found that Plaintiffs' environmental, cultural,

16   spiritual and aesthetic interest and injuries do not fall within

17   the zone of interest for BLM's nondiscretionary duties under

18   § 1005(a).  Fed. Def.'s Mot. at 8-10.  In <u>Pit River II</u>,

19   Plaintiffs' claimed that BLM violated the GSA by failing to

20   terminate and unlawfully continuing twenty-six unproven leases.

21   <u>Pit River II</u>, 793 F.3d at 1153-54.  This Court held that none of

22   the Plaintiffs' claims were within the zone of interest of

23   § 1005(a) because BLM considers environmental impacts when it

24   makes discretionary decisions, but the actions challenged were

25   nondiscretionary.  <u>Tribe v. Bureau of Land Mgmt.</u>, No. 2:04-CV-

26   0956-JAM-JFM, 2013 WL 12057469, at *4-6 (E.D. Cal. July 30,

27   2013), <u>rev'd sub nom.</u> <u>Pit River Tribe v. Bureau of Land Mgmt.</u>,

28   793 F.3d 1147 (9th Cir. 2015).  Defendants argue that because

1  the Lease at issue in Plaintiffs' first cause of action was

2  issued and continued pursuant to the nondiscretionary

3  requirements of § 1005(a) their claims fall outside the zone of

4  interest and must be dismissed.  Fed. Def.'s Mot. at 10.

5      The Court disagrees.  Plaintiffs in this case are not

6  challenging the Lease extension under § 1005(a).  Rather,

7  Plaintiffs allege that BLM's current production extension

8  regulation, 43 C.F.R § 3207.15, which implements the diligent

9  effort obligations of GSA sections § 1005(g)-(h), imposes

10  ongoing requirements on lessees, that the lessee here has failed

11  to satisfy those requirements making BLM obligated to terminate

12  the Lease.  FAC ¶¶ 24-36, 55-64, 78-80.  Specifically, § 1005(g)

13  states that any lease on which actual drilling operations were

14  commenced prior to the end of its primary term and are being

15  diligently prosecuted at that time shall be extended for five

16  years and so long thereafter as geothermal steam is produced or

17  utilized in commercial quantities.  30 U.S.C. § 1005(g)

18  (emphasis added).  1005(h) states that produced or utilized in

19  commercial quantities means the completion of a well producing

20  geothermal steam in commercial quantities and wells capable of

21  producing geothermal steam in commercial quantities so long as

22  the Secretary determines that diligent efforts are being made

23  toward the utilization of the geothermal steam.  Id. § 1005(h)

24  (emphasis added).

25      1005(g)-(h) therefore requires when as here, a Lease is

26  allegedly not actually producing geothermal steam, that diligent

27  efforts are being made toward the utilization.  Thus, one of the

28  interests arguably to be protected by 1005(g)-(h) is ensuring

1  that leases are being productively used so that public lands are

2  not indefinitely tied up by idling leases.  Cf. Nat'l Credit

3  Union Admin. v. First Nat. Bank & Trust Co., 522 U.S. 479, 492-

4  93.  Plaintiffs, as neighbors with an interest in using this

5  land, are then arguably within the zone of interest to be

6  protected by the statute.  Cf. id.; see also Patchak, 567 U.S.

7  at 225-28.

8      Relatedly, Plaintiffs allege that the Glass Mountain Unit

9  Agreement and 30 U.S.C. § 1017, implemented through the unit

10  agreement regulations 43 C.F.R Part 3280, require BLM to ensure

11  that the Unit is administered in the public interest, including

12  through diligent exploration, development and production.  FAC

13  ¶¶ 37-54, 65-77, 81-83.  Plaintiffs allege that the unit

14  operator has failed to satisfy these requirements and BLM is,

15  therefore, legally obligated to terminate the Unit.  Id.  The

16  language of § 1017 indicates a congressional purpose to benefit

17  Plaintiffs as members of the public with an interest in this

18  land.  For these reasons the Court finds that both of

19  Plaintiffs' claims fall within the zone of interest.

20          2.   Res Judicata

21      Claim preclusion bars a later claim where there is: (1) an

22  identity of claims; (2) a final judgment on the merits; and

23  (3) privity between the parties.  Tahoe-Sierra Pres. Council,

24  Inc. v. Tahoe Reg'l Planning Agency, 322 F.3d 1064, 1077 (9th

25  Cir. 2003) (internal quotations and citations omitted).  The

26  parties do not dispute elements two and three, as there was a

27  final judgment on the merits in a previous action, between the

28  same parties.  See Fed. Def.'s Mot. at 13; Pl.'s Opp'n at 17.

The only question, then, is whether there is an identity of claims.  In making this determination the court looks to: (1) whether the rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise of the same transaction nucleus of facts.  Howard v. City of Coos Bay, 871 F.3d 1032, 1039 (9th Cir. 2017) (internal quotation marks and citations omitted).  The fourth criterion, whether the two suits arise out of the same transaction nucleus of facts, is the most important.  Harris v. City of Orange, 871 F.3d 1126, 1132 (9th Cir. 2012).  In applying this test, the Court "must narrowly construe the scope of [the] earlier action."  Cent. Delta Water Agency v. United States, 306 F.3d 938, 953 (9th Cir. 2002).

Defendants argue that Plaintiffs' suit is claim precluded as they allege many of the same facts regarding lease productivity and unit formation as they did in their first amended complaint in Pit River II.  Fed. Def.'s Mot. at 12. Defendants argue that the suits arise out of the same transaction nucleus of facts, namely BLM's geothermal lease administration practices and unit formation and maintenance. Id.  Additionally, Defendants argue that Plaintiffs' second cause of action is barred because it is the same claim they brought in Pit River II – failure to terminate the Glass Mountain Unit.  Id. at 13.

In Fund for Animal, plaintiffs challenged the bison

9

1    management practices of the federal government in Yellowstone.

2    Fund for Animals, Inc. v. Lujan, 962 F.2d 1391, 1394 (9th Cir.

3    1992).  The Ninth Circuit held that an action challenging bison

4    management practices five years earlier did not have preclusive

5    effect, as the earlier action challenged different governmental

6    conduct than that involved in the later action, even though the

7    harm alleged was the same.  Id. at 1398-99.

8         Similarly, here Plaintiffs challenge different governmental

9    conduct than was at issue in Pit River II.  In Pit River II,

10   Plaintiffs challenged a decision document issued by BLM

11   extending twenty-six nonproducing leases in the Glass Mountain

12   Unit.  Pit River II, 793 F.3d at 1153-54.  The issue in that

13   case, was whether BLM could lawfully continue the non-producing

14   leases for up to forty years pursuant to former GSA § 1005(a).

15   Id. at 1159.  Plaintiffs did not challenge Lease 12372, which is

16   now at issue in this case.  Plaintiffs here allege that the

17   lessee of the potentially productive Lease 12372 is not making

18   diligent efforts toward development, making BLM legally

19   obligated to terminate the Lease pursuant to GSA § 1005(g)-(h)

20   and the implementing regulations.  FAC ¶¶ 24-36, 55-64, 78-80.

21   This involves different governmental conduct, namely BLM's

22   failure to enforce the diligent efforts requirement regarding

23   Lease 12372, compared to BLM's decision to extend twenty-six

24   other leases in Pit River II.

25       In Pit River II, Plaintiffs also claimed that BLM

26   unlawfully failed to terminate or eliminate those twenty-six

27   leases from the Glass Mountain Unit Agreement and unlawfully

28   failed to contract the Unit to include only Lease 12372.  First

10

1   Amended Complaint, ¶¶ 107(a)-(b), <u>Tribe v. Bureau of Land Mgmt.</u>,

2   No. 2:04-CV-0956-JAM-JFM, 2013 WL 12057469, at *4-6 (E.D. Cal.

3   July 30, 2013), <u>rev'd sub nom.</u> <u>Pit River Tribe v. Bureau of Land</u>

4   <u>Mgmt.</u>, 793 F.3d 1147 (9th Cir. 2015).  Now Plaintiffs claim that

5   the Unit itself should be terminated for lack of diligence on

6   the remaining Lease 12372.  FAC ¶¶ 81-83. While some of the

7   background facts overlap, Plaintiffs' current causes of action

8   raise additional facts not alleged in the previous suit that

9   give rise to new claims – that diligent efforts have not been

10  made on Lease 12372 which require its termination and that of

11  the Unit.  For these reasons, the Court finds both of

12  Plaintiffs' causes of actions are not claim precluded.

13              3.   706(1) Claim

14       The APA provides relief for an agency's failure to act in

15  § 706(1): "The reviewing court shall … compel agency action

16  unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).

17  To state a claim under 706(1), a plaintiff must assert "that an

18  agency failed to take a discrete action that it is required to

19  take." <u>Norton v. S. Utah Wilderness All.</u>, 542 U.S. 55, 64

20  (2004).  A plaintiff adequately states a claim under 706(1) where

21  they have alleged both a legal duty to perform a discrete agency

22  action and a failure to perform that action.  <u>Vietnam Veterans of</u>

23  <u>America v. Cent. Intelligence Agency</u>, 811 F.3d 1068, 1079 (9th

24  Cir. 2016).  The term law "includes, of course, agency

25  regulations that have the force of law." <u>Norton</u>, 542 at 65.

26  Regarding the discreetness requirement, the "failure to act" is

27  "properly understood as … a failure to take one of the agency

28  actions (including other equivalents) earlier defined in [5

                              11

1  U.S.C] § 551(13)".  Id. at 62.  Agency actions defined in 5

2  U.S.C. § 551(13) include issuance of a rule, order, license,

3  sanction, relief or equivalent benefit.  The discreteness

4  limitation precludes using "broad statutory mandates" to attack

5  agency policy.  Id. at 64.

6      Defendants argue that Plaintiffs have failed to bring a

7  claim under 706(1) because they have not identified any legal

8  duty of BLM's to perform a discrete action.  See Fed. Def.'s

9  Mot. at 14. The Court disagrees.  Plaintiffs rely on 43 C.F.R §

10 3207.15 which states that where, as here, there has never been

11 any actual production on the Lease the lessee "must demonstrate

12 on an annual basis that [they] are making diligent efforts

13 toward utilization of the resource," 43 C.F.R 3207.15(c)

14 (emphasis added), and that production extension will continue

15 only as long as those diligent efforts are being demonstrated.

16 Id. § 3207.15(g).  Further, it provides that "BLM will terminate

17 your lease unless you meet the conditions set forth in 3212.15

18 or 3213.19."  Id. (emphasis added).  These regulations provide a

19 "specific, unequivocal command" to take "discrete agency action"

20 namely, terminate the Lease unless diligent efforts are made, or

21 other conditions met.  Calpine contends that these regulations

22 do not apply, as the current regulations did not govern BLM's

23 decision to extend their lease.  Corp. Def.'s Mot. at 8.  But

24 Plaintiffs' claim is not about BLM's decision to extend the

25 lease.  FAC ¶¶ 2, 79.  Instead, it is about the ongoing

26 diligence requirements of the current regulations which Calpine

27 elected to have govern their lease.  Pit River Tribe v. U.S.

28 Forest Serv., 615 F.3d 1069, 1084 (9th Cir. 2010).  Plaintiffs

12

1   have alleged that Calpine has not and cannot demonstrate

2   compliance with these requirements and thus BLM is legally

3   obligated to terminate the Lease.  FAC ¶¶ 55-64, 78-80. This is

4   sufficient to state a claim under APA § 706(1).  See Vietnam

5   Veterans, 811 F.3d at 1079.  Defendants may, of course, dispute

6   this factually, but not at the motion to dismiss stage.  See

7   Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001) (noting a

8   claim may be dismissed only if it appears beyond doubt that the

9   plaintiff can prove no set of facts in support of his claim

10  which would entitle him to relief.)

11          Similarly, Plaintiffs have alleged in their second claim

12  that the Glass Mountain Unit Agreement requires the Unit

13  operator to continue diligent exploration through timely

14  drilling under an approved plan and that failure to comply shall

15  result in automatic termination of the agreement.  FAC ¶¶ 66-67.

16  Additionally, they point to 43 C.F.R. § 3284.3 which states that

17  "if the unit operator does not drill a well designed to produce

18  or utilize geothermal resources in commercial quantities within

19  the timeframe specified in the unit agreement … BLM will deem

20  the unit agreement void as though it was never in effect." 43

21  C.F.R. § 3284.3 (emphasis added).  Plaintiffs allege that these

22  requirements have not been met mandating termination of the

23  Unit.  FAC ¶¶ 68-77, 81-83.  Again, this provides a specific

24  unequivocal command to take a discrete agency action – terminate

25  the Unit when there hasn't been diligent exploration.  See

26  Norton, 542 at 69 (suggesting an agency may be bound by

27  something other than a rule or regulation where there is a clear

28  indication of a binding commitment to the terms).  Because both

1  claims allege a legal duty to perform a discrete agency action
2  and a failure to perform that action, the Court finds Plaintiffs
3  have stated a claim under 706(1).

4              4.   <u>Statute of Limitations</u>

5      Title 28 United States Code, section 2401(a) provides a
6  six-year statute of limitations to civil action commenced
7  against the United States.  28 U.S.C. § 2401(a).  This
8  limitation applies to cases brought under the APA.  <u>Hells Canyon</u>
9  <u>Pres. Council v. United States Forest Serv.</u>, 593 F.3d 923 (9th
10 Cir. 2010).  The Ninth Circuit has suggested, without
11 specifically addressing the issue, that § 2401(a) may not be
12 applicable in 706(1) failure to act claims under the APA.  <u>See</u>
13 <u>id.</u> at 933 (noting that had the Forest Service failed to act at
14 all Plaintiffs may have had a 706(1) claim despite their 706(2)
15 claims being time barred) (citing <u>Wilderness Soc'y v. Norton</u>,
16 434 F.3d 584, 588-89 (D.C. Cir. 2006) for the proposition that
17 706 relief is available notwithstanding 28 U.S.C. § 2401(a),
18 where the agency ignored a statutory deadline).

19     Defendants argue that Plaintiffs' claims are barred by the
20 six-year statute of limitations because "all the events that
21 purportedly give rise to Plaintiff's claims occurred in the
22 1980's and 1990's."  Fed Def.'s Mot. at 15.  Plaintiffs contend
23 that because they allege Defendants haven't complied with their
24 ongoing duty to act under the GSA, the statute of limitations
25 does not bar their claims as "BLM's ongoing failure to satisfy
26 its legal obligations under the GSA accrues continually until
27 the agency complies with the law."  Pl.'s Opp'n at 27.

28     The Court agrees with Plaintiffs, that the statute of

                                14

1  limitations does not bar their claims. Plaintiffs allege

2  that BLM has an ongoing obligation to ensure diligent

3  efforts are being made on the Lease and the Unit and that

4  BLM is not currently fulfilling this obligation. Plaintiffs

5  seek an order from the Court that they do so.  FAC ¶¶ 78-83.

6  Each day that BLM fails to ensure compliance with the

7  diligent effort requirements constitutes a single, discrete

8  violation of the statute.  See Padres Hacia Una Vida Mejor

9  v. Jackson, No. 1:11-CV-1094 AWI DLB, 2012 WL 1158753, at *9

10  (E.D. Cal. Apr. 6, 2012); Inst. for Wildlife Prot. V. U.S.

11  Fish and Wildlife Serv., No. 07-CV-358-PK, 2007 WL 4117978,

12  at *6 (D. Or. Nov. 16, 2007).  Thus, Plaintiffs action is

13  timely because it seeks relief for BLM's failure to meet its

14  ongoing duty.

15         5.  Prayers for Relief Against Calpine

16      The APA provides no right of action against a non-federal

17  party.  See 5 U.S.C. § 702.  Non-federal parties, however, may

18  be named as defendants in APA actions for the "sole purpose of

19  making it possible to accord complete relief between those who

20  are already parties" under the Federal Rules of Civil Procedure

21  Rule 19, joinder of indispensable parties.  Nat'l Wildlife Fed'n

22  v. Epsy, 45 F.3d 1337, 1344-45 (9th Cir. 1995).  Rule 19 does

23  not create any substantive cause of action against non-federal

24  parties.  Equal Emp't Opportunity Comm'n v. Peabody W. Coal Co.,

25  400 F.3d 774, 783 (9th Cir. 2005).  As such, a plaintiff may not

26  seek any affirmative relief against a non-federal defendant

27  joined under Rule 19 in APA actions.  Quechan Indian Tribe v.

28  U.S. Dep't of the Interior, No. CV07-0677-PHX-JAT, 2007 WL

1    2023487, at *8 (D. Ariz. July 12, 2007).

2         Calpine requests the Court dismiss Plaintiffs' First and

3    Fifth prayer for relief against Calpine as Plaintiffs only basis

4    for naming Calpine as a defendant is under Rule 19.  Corp.

5    Def.'s Mot. at 11-15.  Plaintiffs' First prayer for relief

6    requests this Court "[d]eclare that Calpine is not in compliance

7    with the requirements of the Geothermal Steam Act, its

8    implementing regulations, the Lease, and the Unit Agreement and

9    that such violations continue to this day."  FAC at 18.

10   Plaintiffs' Fifth prayer for relief requests this Court to

11   "[e]njoin any further activity in reliance on the Lease or Unit

12   Agreement."  Id. Because the First prayer for relief seeks

13   affirmative declaratory relief against Calpine, it is dismissed.

14   See Whittlestone Inc. v. Handi-Craft Co., 618 F.3d 970, 974 (9th

15   Cir. 2010) (holding that a motion to dismiss under Rule 12(b)(6)

16   is the appropriate means of disposing of an improper claim for

17   relief).  Plaintiffs' Fifth prayer for relief, however, does not

18   seek any affirmative relief against Calpine.  For these reasons

19   the Court GRANTS Calpine's Motion to Dismiss the First prayer

20   for relief and DENIES its Motion to Dismiss the Fifth prayer for

21   relief.

22                        III.   ORDER

23        For the reasons set forth above, the Court DENIES Federal

24   Defendant's Motion to Dismiss and GRANTS in part and DENIES in

25   part Calpine's Motion to Dismiss.

26        IT IS SO ORDERED.

27   Dated: January 11, 2021

28
                                              _____
                                16            JOHN A. MENDEZ,
                                              UNITED STATES DISTRICT JUDGE