UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PIT RIVER TRIBE; NATIVE COALITION FOR MEDICINE LAKE HIGHLANDS DEFENSE; MOUNT SHASTA BIOREGIONAL ECOLOGY CENTER; and QUALITY ENVIRONMENT,<br><br>Plaintiffs,<br><br>v.<br><br>BUREAU OF LAND MANAGEMENT; UNITED STATES DEPARTMENT OF THE INTERIOR; CALPINE CORPORATION; and CPN TELEPHONE FLAT, INC.,<br><br>Defendants. | No. 2:19-cv-2483 KJM AC<br><br><br>ORDER |

This case arises under the Administrative Procedures Act ("APA") and challenges leases issued by the Bureau of Land Management ("BLM"). The case is before the court on plaintiffs' motion to authorize discovery outside the administrative record. ECF No. 116. The matter was taken under submission on the papers. ECF No. 119. The parties filed a comprehensive joint statement pursuant to the Local Rules of this court. ECF No. 120. The parties have met their meet and confer obligations. Id. at 4. Having considered all the briefing, the undersigned GRANTS plaintiff's motion.

1

**I.     Relevant Background**

The parties submitted a stipulated summary of the case in their joint statement, ECF No. 120 at 2-3, which the court accepts and incorporates largely verbatim below for ease of reference.

The First Amended Complaint in this case asserts two causes of action for failure to comply with a mandatory duty under 5 U.S.C. § 706(1).  See ECF Doc. 63 at 18-19, ¶¶ 79-83. Specifically, the Complaint alleges that Federal Defendants have a legal duty to terminate federal geothermal lease CA12372 and the Glass Mountain Unit for failure by leaseholder and unit operator Calpine to comply with the "diligent efforts" requirements of the Geothermal Steam Act, 30 U.S.C. § 1005, and the Bureau of Land Management's ("BLM") implementing regulations. Id.[1]  Defendants deny these claims and assert various affirmative defenses.  ECF Doc. 80 at 7-8 (Calpine Defendants); ECF Doc. 83 at 10-11 (Federal Defendants).

On January 11, 2021, the Court denied Defendants' motions to dismiss Plaintiffs' First Amended Complaint in its entirety, ECF Doc. 79 at 5-15, but granted Calpine Defendants' motion to dismiss Plaintiffs' first prayer for relief which sought affirmative declaratory relief against Calpine, id. at 15-16.  Plaintiffs then sought limited discovery to ascertain the basis for Defendants' denials of liability and affirmative defenses.  Plaintiffs believe that discovery is allowed for a failure-to-act claim under section 706(1) of the Administrative Procedure Act ("APA") because there is no agency action for which an administrative record is available. Defendants believe that all APA cases, including failure-to-act cases filed under 5 U.S.C. § 706(1), are limited to an administrative record and that no civil discovery is permitted.  After Plaintiffs propounded a set of requests for production of documents and targeted interrogatories for information about government and corporate officials responsible for overseeing the lease and

---

[1] This is the third lawsuit in which Plaintiffs have challenged Federal Defendants' alleged failure to comply with their legal duties under the Geothermal Steam Act in relation to lands of cultural and spiritual significance to the Tribe that are managed by the U.S. Forest Service and the BLM. The two previous lawsuits challenged affirmative agency actions regarding leases.  See Pit River Tribe v. U.S. Forest Serv. ("Pit River I"), 469 F.3d 768 (9th Cir. 2006) (holding that two leases were unlawfully extended in violation of the National Environmental Policy Act and National Historic Preservation Act); Pit River Tribe v. Bureau of Land Mgmt. ("Pit River II"), 939 F.3d 962 (9th Cir. 2019) (holding that 26 leases were unlawfully continued).  The present case alleges unlawful agency inaction.

unit, Defendants sought protective orders and Plaintiffs then moved to compel discovery responses. In accordance with Local Rule 251, the parties filed a Joint Statement of Discovery Disagreement, ECF Doc. 93, and the Court thereafter issued a discovery Order, ECF Doc. 95.

In that Order, this Court agreed with the district court in Seattle Audubon Society v. Norton, No. C05-1835L, 2006 WL 1518895, at *3 (W.D. Wash. May 25, 2006), that "the administrative record is the presumptive starting point for discovery in this case." ECF Doc. 95 at 7. Accordingly, the Court ordered the parties to stipulate to a mutually agreeable production schedule for the administrative record. Id. Thereafter, the parties submitted a stipulation setting forth a schedule for production of the record and a process for requesting supplementation and resolving any discovery disputes. ECF Doc. 99. Pursuant to this schedule, Federal Defendants filed a "Notice of Lodging of Administrative Record" on July 14, 2021. ECF Doc. 100. Under the stipulated schedule, the other parties had until August 4, 2021 to request supplementation of the lodged record. ECF Doc. 99. This deadline was ultimately extended to December 3, 2021 by four stipulated extensions to allow the non-federal parties additional time to review the Record and to submit any additional documents to Federal Defendants, and to allow the Federal Defendants an opportunity to review any documents submitted by the non-federal parties to determine whether those documents should have been included in the Record. See ECF Docs. 105, 109, 111, and 112. Within the timeframe agreed to by the parties, Calpine Defendants submitted a limited number of documents for Federal Defendants' consideration. Plaintiffs did not provide any documents to Federal Defendants. Federal Defendants filed a "Notice of Lodging of Supplemented Administrative Record" on February 25, 2022. ECF Doc. 113.

The Court's June 8, 2021, discovery Order also addressed and denied Calpine Defendants' separate motion for a protective order from any discovery on the ground that the Complaint does not seek any affirmative relief against them. ECF Doc. 95 at 7-9. Calpine Defendants moved for reconsideration of this holding from Judge Mendez and sought a protective order "to prohibit Plaintiffs from obtaining any discovery against Calpine in this case." ECF Doc. 96 at 6. Federal Defendants "support[ed]" Calpine's motion, emphasizing that even if discovery of Calpine were permitted, judicial review of Plaintiffs' claims would be limited to the administrative record

3

unless Plaintiffs can "establish, by 'clear evidence' that one or more of the narrow exceptions to the record review rule applies." ECF Doc. 103 at 2 (citation omitted). Federal Defendants did not file a separate motion for reconsideration. Judge Mendez granted Calpine's motion for reconsideration, overruling the magistrate judge's Order as to Calpine Defendants and granting the requested protective order. ECF Doc. 110.

## II.     Analysis

### A. Preliminary Considerations

Before addressing the merits of the present motion, the court must address two preliminary arguments raised by defendants. First, defendants contend that plaintiffs' motion is untimely and/or waived in light of the stipulated schedule for lodging the administrative record. ECF No. 120 at 23. The court finds the stipulation's language too ambiguous to support defendants' waiver and untimeliness arguments. The applicable stipulation states that the parties will use "their good faith efforts to resolve any dispute regarding the completeness of the administrative record, to resolve any disputes regarding the admission of evidence not included in the administrative record, or pursuit of discovery" and will complete this process by December 3, 2021. ECF No. 112 at 1. The stipulation also states in a separate paragraph that "[i]n the event the parties cannot resolve any disagreements as to the completeness of the administrative record, the admission of evidence not included in the administrative record, or the pursuit of discovery, they will propose a briefing schedule for submitting their disagreement to the Court." Id. at 2. Taken together, these provisions could be read to establish a December 3, 2021 deadline for negotiations between the parties, but not necessarily a deadline for court intervention.

Though stipulations are generally enforceable, and the court takes deadlines seriously, the undersigned does not find a waiver in this case because it is not sufficiently clear that the December 3, 2021 deadline was intended to prevent later motions—especially motions brought following supplementation of the administrative record after that date, pursuant to the process established by the parties. The administrative record here was supplemented on February 25, 2022. ECF No. 113. The court rejects the argument that any subsequent attempt to conduct discovery outside the record is barred by pre-supplementation stipulations.

1   Second, defendants argue that Judge Mendez has already rejected supplementation of the
2   administrative record when he partially overruled the undersigned's previous order as to the
3   propriety of a protective order for defendant Calpine. ECF No. 120 at 20. It is true that Judge
4   Mendez stated that the administrative record is the presumptive limit on the scope of discovery in
5   agency inaction cases, citing Seattle Aubudon Society v. Norton, No. C05-1835L, 2006 WL
6   1518895 at *3 (W.D. Wash. May 25, 2006), and further stated that "[p]laintiffs have failed to
7   convince this Court that any exceptions should be applied here." ECF No. 110 at 2-3. However,
8   the prior motion involved only initial disclosures and the propriety of early discovery, not the
9   distinct question now presented about the propriety of discovery outside the administrative record
10  on the basis of a fact-specific showing following lodging and supplementation of the
11  administrative record. Moreover, Judge Mendez' ruling was limited to the issue of a protective
12  order for Calpine. Id. Accordingly, that ruling does not dictate the outcome here. Having
13  resolved these preliminary issues, the court turns to the merits of the motion.

14          B.   Legal Standard for Consideration of Extra-Record Materials

15  Failure to act cases under the APA are governed by 5 U.S.C. § 706(1), which provides
16  that "the court shall review the whole record or those parts of it cited by a party . . ." The
17  statutory phrase "the whole record" refers to the Administrative Record. See Florida Power &
18  Light Co. v. Lorion, 470 U.S. 729, 743-44 (1985). Accordingly, the language of the APA itself
19  establishes that inaction cases are, in the language of Rule 26(a)(1)(B)(i), cases "for review on an
20  administrative record." In the previous discovery order in this case, the undersigned therefore
21  found that this case was exempt from the Rule 26 requirement of initial disclosures. ECF No. 95
22  at 6, 9.

23  However, there are multiple scenarios in which extra-record documents may ultimately be
24  considered by a court in a § 706(1) failure to act case. The Ninth Circuit has recognized
25  exceptions to the general rule limiting reviewing courts to the administrative record in all APA
26  cases, including "(1) if admission is necessary to determine whether the agency has considered all
27  relevant factors and has explained its decision, (2) if the agency has relied on documents not in
28  the record, (3) when supplementing the record is necessary to explain technical terms or complex

5

subject matter, or (4) when plaintiffs make a showing of agency bad faith." Lands Council v. Powell, 395 F.3d 1019, 1030 (9th Cir. 2005) (internal quotations omitted). These exceptions are not exclusive. See Firebaugh Canal Water Dist. v. United States, No. 1:88-CV-00634 OWW DL, 2010 WL 3702664, at *1, n.1 (E.D. Cal. Sept. 17, 2010).

Failure to act cases, by their nature, may present circumstances in which is it is particularly appropriate to go beyond the formal administrative record:

> [G]enerally judicial review of agency action is based on a set administrative record. However, when a court considers a claim that an agency has failed to act in violation of a legal obligation, "review is not limited to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record." Friends of the Clearwater v. Dombeck, 222 F.3d 552, 560 (9th Cir. 2000); see also Independence Min. Co., Inc. v. Babbitt, 105 F.3d 502, 511 (9th Cir. 1997) (noting that when a suit challenges agency inaction, district court can consider supplemental statements of an agency position because there is no date certain by which to define the administrative record). The reason for this rule is that when a court is asked to review agency inaction before the agency has made a final decision, there is often no official statement of the agency's justification for its actions or inactions.

San Francisco BayKeeper v. Whitman, 297 F.3d 877, 886 (9th Cir. 2002).

In previously denying plaintiff's motion to compel initial disclosures and early discovery, the undersigned rejected both defendants' suggestion that admission of documents beyond the administrative record is categorically unavailable, and plaintiff's inverse theory that inaction cases are categorically exempt from the discovery limits otherwise applicable in ADA cases. The court found that "the rule of BayKeeper and Clearwater applies to supplementation and consideration of extra-record evidence on the merits, and not to the applicability of Rule 26(a) [initial disclosures]." ECF No. 95 at 6. The undersigned quoted the district court in Seattle Audubon Society v. Norton, supra, which noted that the denial of initial Rule 26 disclosures in an inaction case "does not preclude the possibility of the use of [exceptions justifying supplementation of the record] in the instant action. Indeed, it seems clear that in cases where plaintiff complains of a failure to act, there is a greater chance that some extraneous piece of information might be necessary to shed light on the agency's inaction—there simply are more holes in the administrative record for the parties to identify and plug. . . . This supplementation,

6

however, is best pursued on a case-by-case basis, using the administrative record as the presumptive limitation of scope." 2006 WL 1518895, at *3.

The court now affirms its previous conclusion that agency inaction cases are not categorically exempt from the general administrative record exception to discovery, which applies presumptively. However, case-specific circumstances may nonetheless warrant consideration of evidence outside the administrative record. In other words, the administrative record provides "the presumptive starting point," id., but not necessarily the outer limit of evidence that may be considered on the merits in evaluating an agency's failure to act under § 706(1). That the court may in appropriate cases consider evidence outside the administrative record, however, does not necessarily mean that plaintiffs may conduct discovery as they would in a non-APA case. In Seattle Audubon Society itself, the court neither ruled out nor authorized discovery. Whether plaintiff may utilize Rule 33 or other tools of civil discovery is a distinct question, to which the court now turns.

C. Availability of Extra-Record Discovery in APA Cases

Plaintiffs rely primarily on cases acknowledging what this court has already found: that courts may, in appropriate cases, consider documents beyond the administrative record when evaluating agency action or inaction. Most of the cited cases involved evidence that was presented by—and thus already in the possession of—the plaintiffs. See S.F. Baykeeper, 297 F.3d at 886; Firebaugh Canal Water Dist., 2010 WL 3702664; Friends of the Clearwater v. Dombeck, 222 F. 3d 552, 560 (9th Cir. 2000); Democracy Forward Found. v. Pompeo, 474 F. Supp. 3d 138, 149 (D.D.C. 2020); Nio v. DHS, 314 F. Supp. 3d 238, 242 (D.D.C. 2018); A.A. v. United States Citizenship & Immigr. Servs., No. C15-0813 JLR, 2018 WL 1811352, at *4 (W.D. Wash. April 17, 2018). Still other cases note the possibility of either party introducing evidence outside the administrative record. See Wildearth Guardians v. U.S. Fed. Emergency Mgmt. Agency, No. CV 10-863-PHX-MHM, 2011 WL 905656, at *2 (D. Ariz. Mar. 15, 2011). None of

////

////

////

these cases, however, address the question whether plaintiff may utilize the tools of discovery to seek such information in the first instance.[2]

Some courts have, however, expressly found that where evidence outside the administrative record may be offered, it must be discoverable. In Sierra Club v. U.S. Dep't of Transp., 245 F. Supp. 2d 1109, 1119 (D. Nev. 2003), an agency inaction case under § 706(1) of the APA, Chief U.S. District Judge Philip M. Pro of the District of Nevada granted a motion to compel discovery related to the facts and circumstances surrounding the agency's alleged failure to act. Relying on cases recognizing the district court's ability to consider evidence outside the administrative record—Nat'l Audubon Society, supra (challenge to agency inaction); Friends of Clearwater, supra (challenge to agency inaction); and Asarco, Inc. v. U.S. Env't Prot. Agency, 616 F.2d 1153, 1160 (9th Cir. 1980) (challenge to agency action)—Judge Pro reasoned that discovery should be allowed where the requested information is necessary to fairly adjudicate an issue presented by the case. Id. Accordingly, he allowed the Sierra Club to serve requests for production of documents on the defendant agency. Id. at 1120. The court finds Judge Pro's opinion persuasive.

In an analogous type of litigation involving judicial review of an administrative record, the Ninth Circuit itself has likewise permitted extra-record discovery. Public Power Council v. Johnson, 674 F.2d 791, 794 (9th Cir. 1982), was a case brought directly in the Court of Appeals under the Pacific Northwest Electric Power Planning and Conservation Act, challenging the legality of contracts offered to various public utilities by the Bonneville Power Administration ("BPA"). Prior to merits review, the court denied a motion to quash deposition subpoenas and authorized the petitioner utility districts to conduct discovery. Petitioners argued that a complete administrative record was required for fair judicial review, and that record completeness required

---

[2] Some of the other cases cited by plaintiffs are simply not on point. For example, in Vietnam Veterans of Am. v. CIA, the cited footnote expressly states that the parties disagreed about whether the case was an APA action at all, and the court declined to decide the issue. No. 09-CV-0037 CW (JSC), 2011 WL 4635139, at *5, n.3 (N.D. Cal. Oct. 5, 2011), aff'd in part and rev'd in part, 791 F.3d 1122, 1132 (9th Cir. 2015); see also Ksanka Kupaqa Xa'lcin v. United States Fish & Wildlife Serv., 534 F. Supp. 3d 1261, 1268 (D. Mont. 2021) (administrative record was deemed complete and extra-record evidence was not an issue).

the testimony of BPA officials who had negotiated the contracts and documents memorializing the negotiating sessions. The BPA argued that judicial review was limited to the agency record, and discovery was therefore unavailable. The court agreed with petitioners. Reserving the question of what standard of review applied under the APA, the court recognized that "even when judicial review is confined to the record of the agency, as in reviewing informal agency actions, there may be circumstances to justify expanding the record or permitting discovery." Public Power Council, 674 F.2d at 793.

The court went on to discuss numerous circumstances in which supplementation of the administrative record might be appropriate, and explained that the potential for such evidentiary expansion warranted the petitioner's development of facts relevant to their claims. The court noted repeatedly that it was not making any determination whether the record would ultimately be expanded, but only permitting limited discovery so that petitioner could in the future seek supplementation related to their allegations of improper contract negotiations. Id. at 793, 794-95. Although Public Power Council was not an agency inaction case under § 706(1), the undersigned finds that the same core principles apply here. That the instant action is an agency inaction case makes the case for permitting discovery even stronger, as the administrative record is more likely to be inadequate to a determination of the merits. See S.F. Baykeeper, 297 F.3d at 886; Dombeck, 222 F. 3d at 560; see also Western Watersheds Project v. Pool, 942 F. Supp. 2d 93, 100-01 (D.D.C. 2013) (noting that agency inaction cases may well require sources of proof beyond the administrative record, and discovery may therefore be available); Nat'l L. Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affairs, 842 F. Supp. 2d 127, 131 (D.D.C. 2012) (same).

Having concluded that limited discovery is permissible in some cases in which review is ordinarily constrained to the administrative record, the court now turns to the question whether extra-record discovery is appropriate in this case.

   D.   Permission to Conduct Extra-Record Discovery in This Case

Plaintiff's proposed interrogatories may be found at ECF No. 116, pp. 7-13. The nineteen interrogatories seek details regarding Lease CA 12372 and the Glass Mountain Unit, and request

specification of the factual bases for the Answer's denials of the Complaint's specific allegations. Id. Defendants, in their portion of the joint statement, do not directly address the contents of the proposed interrogatories or make any argument as to why the administrative record is sufficient to address the issues raised in the proposed interrogatories. See ECF No. 120 at 15.

As discussed above, Lands Council v. Powell identified several situations in which extra-record evidence may be admissible in an APA case. The Ninth Circuit held that such evidence may appropriately be considered (1) if admission is necessary to determine whether the agency has considered all relevant factors and has explained its decision, (2) if the agency has relied on documents not in the record, (3) when supplementing the record is necessary to explain technical terms or complex subject matter, or (4) when plaintiffs make a showing of agency bad faith. Lands Council, 395 F.3d at 1030. Plaintiffs argue that discovery is appropriate here to identify evidence that would be admissible under Lands Council:[3]

> [T]he "administrative record" lodged by Defendants simply does not address all – or indeed any – of the predicate material facts that underlie Plaintiffs claims and that Defendants deny. Additional information regarding those facts is directly relevant to the Court's ability to resolve this case on cross-motions for summary judgment and necessary for the Court to understand the complex subject matter of the Geothermal Steam Act leasing program. For example, Plaintiffs anticipate that Defendants will argue that the statute's "diligent efforts" requirements were satisfied through reference to non-obvious documents produced in the record, but because there are no annual "diligent efforts" decisions or determinations among those documents, there is no way for Plaintiffs to understand the basis for BLM's continuing non-action and no way, frankly, for the Court to have a full and adequate understanding of operations (or non-operations) on the lease and unit. Sivas Decl. at ¶¶ 5-9. Plaintiffs' targeted discovery requests are intended to develop that missing information.

ECF No. 120 at 13.

Plaintiffs have provided a detailed declaration explaining the need for gap-filling. Plaintiff's counsel explains that after her review of the administrative record, based on her

---

[3] The court does not find that the Lands Council categories are exclusive, particularly in agency inaction cases such as this. See Wildearth Guardians, 2011 WL 905656, at *2; Firebaugh, 2010 WL 3702664, at *1, n.1. However, the instant motion may be resolved with reference to the Lands Council exceptions. Plaintiff's theories of relevance are encompassed by the first and third Lands Council categories.

10

> visits to the area and Plaintiffs' ongoing relationship with local officials, Plaintiffs believe that no exploration or development activities (other than routine maintenance), even if proposed by the lessee, have occurred during the last two decades. But there is no way to tell from the produced documents what, if any, proposed activities were ever carried out. Because there is no agency decision or particular activity put at issue by Plaintiffs' failure-to-act claims in this matter, and thus no focal point for an "administrative record" as there would be for a challenge to an agency action, it is not possible to ascertain from this production what, if any, documents Defendants intend to rely on to support their denial of Plaintiffs' material factual allegations.

ECF No. 120-5. Counsel goes on to state that many of the documents produced as part of the record are incomprehensible to a non-agency reader, explaining:

> In a typical challenge to a particular agency action on a decision record, [ ] random agency printouts are of little significance because the focal point for judicial review is the reasoning in the formal agency decision documents and the adequacy of the supporting environmental review. Because this case does not challenge a particular agency action or decision, an unauthenticated and nearly incomprehensible document entitled "list of actions" may prove important to Defendants' litigation strategy – presumably that is why BLM ran the data report and included it in the compilation – and Plaintiffs should have an opportunity to inquire about its contents, authors, and significance.

The court agrees. As in Sierra Club v. U.S. Dep't of Transp., supra, the requested information may well be necessary to fair adjudication of the issues presented by the case. See 245 F. Supp. 2d. at 1119. As noted above, defendants have not shown that the information sought would not be relevant in the ways identified by plaintiffs, nor demonstrated that the administrative record includes the requested information. On the facts of this case, limited discovery outside the administrative record is appropriate and may go forward.

This order does not constitute or imply a ruling on any potential objections that may be raised to plaintiffs' proposed interrogatories; it is only a ruling that they may be served and that defendants must respond. The court further emphasizes that permission to serve interrogatories implies no ruling on the admissibility of evidence or the scope of the record that the district judge will ultimately consider in adjudicating this case on the merits. The undersigned, while available for dispute resolution regarding the approved interrogatories, strongly encourages the parties to amicably resolve disputes as to the scope and content of discovery.

11

### III.    Conclusion

The motion to compel (ECF No. 116) is GRANTED and the proposed interrogatories are now deemed SERVED.

IT IS SO ORDERED.

DATED: June 1, 2022

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE